number 10-1152 Joseph Ferguson v. Margaret. Okay, now Justice Robert Cahill will also be on this case. He'll be listening to the tapes. He couldn't be here. His wife had an emergency and he's in the hospital. So he will not be able to be here at this point in time, but he will participate in the resolution of this case and he will listen to the tapes of this case. Okay, now will the lawyers please approach and identify yourselves, please. I'm Alexander Polikoff, Your Honor, representing the plaintiff, Joseph F. Ferguson, Inspector General of the City of Chicago, who is also the appellant. I'm Miriam Casper on behalf of the defendant, Apolli Mara-Jordians, the corporation. Mr. Polikoff, you've been here before. You understand our rules. We're going to give you 15 minutes so you have to reserve some time for rebuttal and you can proceed. Thank you, Your Honor. I'm glad for that reminder because the last time I was here was some decades ago. This case involves, as Your Honors know, the Inspector General's effort to enforce a subpoena he issued and served upon the Corporation Council of Chicago. The subpoena was served as part of an official investigation of possible misconduct by city employees in the awarding of a sole source contract. The Corporation Council, who is the defendant in the lawsuit, takes the position that the IG cannot enforce his subpoena. Her view is that as the city's lawyer, only she has that power. She also takes the position, Your Honors, that she need not in any event respond to the subpoena because the documents sought are protected by the attorney-client privilege. The trial court ruled in favor of the Corporation Council on both points and we're here on appeal. Your Honors, we believe that to give the Corporation Council the power to enforce or not to enforce the Inspector General's subpoena would strip that office of the independence which the city council endowed it with and then allowing the Corporation Council to obstruct an official IG investigation of possible misconduct within the city. Now, you're not really serious when you say the Corporation Council is obstructing this, are you? I really am, Your Honor. The briefs show and their affidavits supporting this how many people have been interviewed and investigated. The Corporation Council tendered every document that was requested. However, in her decision-making power, she left out what she believes are privileged documents. That's correct, Your Honor. So everything was turned over. It was just turned over to the extent that the Corporation Council believed there were privileged matters. The documents were redacted to such a considerable extent that I believe I'm justified in advisedly using the word obstruct. The Corporation Council's position on attorney-client privilege has de facto prevented this investigation from going forward. I do not believe, with all deference, Your Honor, that obstruct is an overstatement and the briefs make that clear. And the exhibits to the complaint show the extent of the redaction, which is considerable. Well, if the court or this court were to conclude that there's a privilege that does exist and that the trial court should review the documents to determine whether or not the redacted materials are privileged, then there really wouldn't be any basis for saying that there's an obstruction here, would there? We think there would be, Your Honor, because the issue of obstruction arises from the issue of refusing to turn over materials on the ground of the attorney-client privilege. Is there anything in the statute creating the Inspector General that would in any way suggest that the attorney-client privilege has somehow gone by the wayside here? Yes, Your Honor. We think that the statute, the ordinance in question, by vesting independence, considerable independence. But this Inspector General doesn't have the power to bring any action whatsoever of any kind. The most that he can do is report to the mayor and turn over everything he has to the state's attorney or the U.S. attorney or the attorney general of the state of Illinois. Isn't that correct? That's correct. All right. So don't you think you're kind of overstating it by saying that this statute somehow gives him, because he has independence, he's not required or that he has some sort of trumping of an attorney-client privilege? No, I do not, Your Honor, because the purpose of giving independence to the office was to validate, from the point of view of the public's interest in transparency in government, an independent office, untrammeled by the mayor and the Corporation Council and other city officials, to conduct investigations that would be seen by the public as responsible and fair and, most importantly, independent. If the Corporation Council, the mayor's lawyer, in a generalized sense, the object of the investigation, is able to obstruct, and I repeat because I think I'm justified in using that word, is able to obstruct investigations by asserting the attorney-client privilege, what, Your Honor, would the consequence be? Every time a sensitive investigation went forward and people were concerned about the investigative capacity of the Inspector General, wouldn't they rush over and talk to the Corporation Council ahead of time, thereby to insulate from his investigative capacity the documents and the conversations they wanted to preserve as safe? And wouldn't the public see through that and realize that any time they... I think it's unrealistic to suggest that someone would suddenly give information that would be protected for the sole purpose of... That makes no sense to me, but go on. Well, Your Honor, I hate to proceed if something I've said makes no sense to you. I'd like to try once more. No, I don't see the one portion of your remark, that this would suggest that people would suddenly go to the Corporation Council's office to give them information that would be detrimental to their own person. But for the purpose of preserving the secrecy of it from the investigative capability of the Inspector General, that seems to me to be reasonably likely. But even apart from that narrow point, the public perception would be that by asserting the attorney-client privilege, those within the city, those who are the objects of investigation, have the capacity by asserting the attorney-client privilege to prevent the investigation, and that erodes the independence and the appearance of independence that the City Council endowed this office with. So it's not just the inability of the Inspector General to prosecute. You're absolutely right. He can turn over reports. But the ability to independently investigate and prepare those reports is what the City Council ordinance vested that office with, and that would be taken away if the attorney-client privilege is allowed to prevail. Well, what if we conclude that the appropriate forum for the Inspector General under these circumstances is such that the court could appoint an attorney or the Inspector General in this instance could have requested appointment of counsel other than the Corporation Council, but that the privilege still... What case could you really tell us suggests that this Inspector General, who is a creature of this municipal act, suddenly has the authority to dispense with attorney-client privilege? Isn't that something that is only left to the court to decide? We're not saying that he dispenses with the attorney-client privilege, Your Honor. We're saying that the attorney-client privilege, for four distinct reasons set out in our briefs, are unavailable under these particular circumstances, not under a lot of other circumstances. Can I answer your question directly? The first case, Your Honor, that's directly answering your question, the first of the four reasons, is the Illinois Supreme Court decision in waste management, where the court said specifically the duty of cooperation, which existed by contract in that case between the insured and the insured, removed any expectation of confidentiality, which is a crucial element of the privilege, and therefore the privilege was unavailable. So I have four reasons, but the first one alone... I don't see that. I mean, I understand that's what you cited for your case. Well, let me tell you, Your Honor, why we think that the fact that it involves an insurance company and an insurer makes it an even stronger case than the one we have here involving the government for the application of the privilege. The reason is that there are multiple reasons why the existence of the privilege is more doubtful in the governmental context than in the private sector context. When government attorneys are claiming the privilege and the client is a government organization, the cases, as we've cited a number in the briefs, raise questions in the Illinois Supreme Court's rules of professional conduct. But you cannot compare the inspector general, this creature of the act, in any way similar to a U.S. attorney... I'm not. I'm not, Your Honor. ...or the state's attorney, or the attorney general of the state of Illinois when this inspector general has absolutely no power whatsoever to even commence an action. Your Honor, I'm not comparing him to the U.S. attorney. I can see up front he doesn't have the power to prosecute. The one case you cite is waste management. I'm coming to the next one, but let me finish on waste management. Because the inspector general is a part of government and because his office is an investigative agency of government, we know that the exercise of the right to claim the privilege by the government attorney, who is the corporation counsel in this case, is more problematical than in the private sector. So there's more reason to question the application of the attorney-client privilege in the governmental sector than in the private sector. That's why waste management, to come back to that case, is such a powerful case for us. If waste management says that the duty of cooperation overrides, vitiates, trumps the attorney-client privilege in the private sector, it's doubly the case that it would do so in the governmental sector. And we have a very strong duty of cooperation here. Yes, it's in the... It's in the ordinance, and I won't put the language if you're familiar with it, because I was going to, but that very strong duty of cooperation in the governmental sector particularly, under the waste management case, ought to be QED for our side, Your Honor. That's a reason standing alone, all by itself, removing the expectation of confidentiality that's an essential element of the privilege, and the result should be no privilege in this case because of the duty of cooperation. You ask me for a case, there's a case. Now there's another reason. That's only one of our four reasons. The second reason is the same waste management case says that when parties have a common interest, an attorney acting for both of them can't claim the privilege. A dispositive reason, quote, unquote, in the waste management case, second freestanding dispositive reason, we have a common interest here. The corporation council, rather the city, and the inspector general both share the common interest in not only transparency in government, but independent investigation of government misconduct. So that's the second reason, Your Honor. Now I'm going to give you reasons three and four why the privilege doesn't exist in this case. It's not a question of the court reviewing in camera and deciding to what extent it is or isn't protected by the privilege. Our fundamental position is that for the four reasons I'm articulating, there is no privilege for the judge to look at in camera. Reason number three, preservation of the public's interest in the appearance of integrity in government. We've said there's no Illinois case applying this principle. We've cited several federal cases, the majority of which do apply the principle. And for this reason, this reason alone, my reason number three, they deny the privilege even to the president of the United States, let alone to the mayor of the city of Chicago. And the fourth reason, Your Honor, same cases talk about a separate reason, the special duty that government lawyers owe to the public trust and the public interest in integrity of government. Lawyers for the government are different, and the professional rules say explicitly, our own Illinois Supreme Court's rules, that the application of the rule of confidentiality, which includes the attorney-client privilege, is different for government lawyers than it is for private lawyers. They don't try to decide what that different balance, which is the phrase they use, what that difference balance ought to be. They do say it's not governed by these rules. But we know that the professional rules say that by court order or other law, a lawyer is free to disclose confidences of a client. So what is that other law that applies in this case? Our contention is that that other law is embodied in the four reasons I've mentioned. Those four reasons are based on Illinois Supreme Court decisions on rules on interests of public policy, both. And two decisions in particular, not just waste management, which is one, but consolidated coal, which is another, Illinois Supreme Court has in recent years said in those two decisions the attorney-client privilege should be construed as narrowly as possible because it's an obstruction. They use that word. It's an obstruction to truth-telling. It's an obstruction to getting at the truth. So to summarize, Your Honor, there are four separate reasons. Collectively, those reasons are powerful. They are based on Illinois Supreme Court decisions. They are based on matters of public policy. And the four together do not have effective rejoinders from the Corporation Council. They constitute the other law under the rules of professional conduct in Illinois, the other law which supports our view that no attorney-client privilege exists here and that the Corporation Council would not be violating any rules of professional conduct by making disclosure. All right. Well, thank you very much and save some time for rebuttal. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Every single day, city departments and employees consult with the Corporation Council's office so that they may do their work in compliance with all of the myriad laws and regulations that govern the city's work. Because the privilege enables the Corporation Council to provide them with fully informed legal advice, it underlies the very functioning of government. This morning, I will explain that nothing about the Inspector General's office prevents the Corporation Council from asserting privilege, so dismissal was proper. But before turning to the merits, I just want to... Well, shouldn't the court decide whether the documents that were tendered were properly redacted for privilege? Your Honor, in this case, I would actually submit that that issue has been waived. We have maintained... When the documents were redacted, a privilege law was submitted. No issue was raised in the circuit court regarding whether the redactions were appropriate. On appeal, we have asserted that the Inspector General does not dispute that the documents were properly... Assuming the privilege can be invoked, that it was properly applied here. And even now, I don't understand him to be requesting any sort of relief of that kind. No, but we don't have to agree with anything that when you say that the issue has been waived, and we don't have to agree that he's conceding that the privilege has been waived. He certainly stood up here moments ago and claimed there is no privilege, and went to court to have those documents tendered for the purpose of having them tendered without redactions. Yes, his position... And doesn't the nature of his complaint request that relief? Certainly, that relief is not explicit in the complaint. The complaint does ask for unredacted documents. I didn't mean to suggest otherwise. So how is it waived? The question... The Inspector General's position is there is no privilege at all. Period. It was not an option to produce anything with redactions at all. Not that... Assuming the Corporation Counsel... The trial court here never looked at the documents, did they? No. The trial court never made any determination at all. That's right. No request was made... She said there was no right to seek an attorney and that the privilege does exist. Didn't she say that? She did. So she concluded that there was a privilege, but she also said there was no right to seek an appointment of an attorney. Right. And once there was a conclusion that there was the privilege, the case... Then the complaint was dismissed because there was no dispute about whether, assuming it could be invoked at all, whether the redactions were appropriate. Let me ask you this. The Inspector General claims that they're trying to find corruption in regard to certain contracts that the city entered into. That that's their job. What is your job in regard to corruption? Your Honor, I don't... Is your job to protect those who may be corrupt or is your job also to seek out corruption? Your Honor, the duty of the Corporation Counsel is also set forth in the Chicago Municipal Code. And the Corporation Counsel does have an obligation to conduct all of the city's law business and to represent the interests of the city in litigation. Is the Corporation Counsel also to represent the people of the city of Chicago? It represents the city of Chicago as a governmental entity in litigation against any of its employees or the city itself. Certainly the Corporation Counsel doesn't wish to minimize the problems that the Inspector General is... Well, the problem I have is this. If you have an Inspector General and he calls your office and says, I want these documents, I need to look at these documents to see if there's any corruption, wouldn't you just give it to him? Your Honor, it's always open to the Inspector General's office to see if the client would be willing to waive the privilege. There's no allegation here that this occurred. Well, there was no waiver. The Corporation Counsel believes that there are privileged materials here that do not have to be turned over. That's true, although there's also no allegation that consent was ever sought by the Inspector General. Well, have you argued that there was no exhaustion of a remedy here or something? No, not at all, Your Honor. Well, let me ask you this. The judge who heard this matter concluded that there was a conflict between the Corporation Counsel in its effort to exercise an asserting client privilege and the Inspector General in his request, actually it was her request initially, to receive certain documents and the court stated that there was a conflict between the two parties, the Corporation Counsel and the Inspector General. Do you agree with that, that at the proceedings in court she indicated that? Yes. All right. Now, knowing that, and also didn't the Inspector General ask the court at that point to consider the appointment of counsel that was representing the Inspector General? Well, certainly as we explained in our brief, there wasn't an explicit request made. The Inspector General mentioned that the courts have the power to do that. But we do argue and explain in our brief that because the Corporation Counsel, that there's no parallel statute with the state's attorney and the Attorney General that would allow for the courts to intervene and appoint counsel. As we also argue, because this lawsuit is by one city official against another. Well, what's the difference between this case and the public defender case?  What's the difference? The public defender, in fact, is not simply an arm of county government like the Inspector General is. And why do you say that? What do you base that on, that the public defender isn't an arm of the county government, when in fact the Cook County public defender is indeed the Cook County public defender? It is. To represent indigent defendants in cases that occur in Cook County. We do base that in part upon the fact that under the statute he is paid, created by state statute, and essentially his salary is paid by the state for the most part. Well, isn't the Corporation Counsel and the Inspector General, aren't they paid by the city of Chicago? Right, by the same entity. But the Cook County public defender isn't paid by Cook County? I think most of his salary comes from the state. So your distinction would be where they get their pay from? Well, that's part of the distinction with the public defender. And also in the public defender case, the court noted that the statute described immunity for the public defender and also discussed indemnification. We don't have anything like that here, indicating any independent capacity to sue by the Inspector General. In fact, as we argue in our brief, this case essentially. What good is power to issue subpoenas? Do you think that there's no implication here whatsoever by the granting of the power to subpoena? I think the granting of power to subpoena has to be read in context. And what is it then? What is this power? Well, let me backtrack. It's not actually an explicit affirmative grant of power. There's language in the Inspector General's ordinance that says, after seven days, he may take no action. Until seven days have passed, he may take no action. But even allowing for the fact that it says he may take action to enforce a subpoena, that has to be read in the context of the rest of the municipal code. What does that mean? What is your interpretation? That it means go to the Corporation Council to get your subpoena enforced. Because the Corporation Council is explicitly and exclusively in charge of all of the city's legal affairs. Didn't the Inspector General go to the Corporation Council and request that the documents be tendered in an unredacted fashion, without any privileged materials? That request was made. But then he went off and filed a lawsuit. Well, didn't the Corporation Council, in fact, refuse to tender those documents to the Inspector General without redactions? Correct. So what is your suggestion that he do at that point? Go ask again? At that point, our position is that his recourse is to ask for an attorney to be appointed to do this business of the city's legal business. What authority does the Corporation Council have by way of statute that would even permit the Corporation Council to appoint counsel for the Inspector General? We submit that that authority is included in the provision that puts the Corporation Council in charge of all of the city's law business and in charge of representing the city's rights and obligation in any procedure. Well, if there was a conflict, as the court noted there was, then why didn't the Corporation Council's office appoint counsel? I don't believe any request was ever made, and certainly there's no allegation that a request was made to the Corporation Council for appointment of counsel in this case. But you believe that the Corporation Council has the power to appoint? I believe that, yes. Our position is that she could have appointed an attorney for him. Now, of course, we also argue that a lawsuit against another city official or department or the city itself, where the city is suing the city itself, is not one over which the courts have jurisdiction. But that doesn't mean that counsel couldn't have been appointed, you know, for any other purpose. Is there any public policy, good or bad, that would come from that position, that the inspector general can never sue the Corporation Council's office for documents or that any department head can never sue within a municipal department? Is there good public policy behind that? Is there bad public policy? Not that we are arbiters of public policy. We are not as a court of review. But I'm asking you that. I think it was certainly open to the city council, as it did, to delegate the authority to bring lawsuits only to one attorney and to the city as a whole. Because as some of the cases describe, I believe it's suburban ROE, but I may have that wrong. When you have city departments simply going off on their own and filing official capacity suits without anybody monitoring that or having any say in what's going forward, chaos. Putting aside the probably more important issue of whether the privilege exists, would the Corporation Council have appointed someone? I mean, what difference does it make at this point since there is an attorney that's representing the inspector general to try to receive or get these documents for purposes of an investigation, a legitimate investigation that is definitely encompassed under the statute that creates the inspector general? So if the question is would a council have been appointed, if council was appointed. Well, what difference does it make at this point? Because the issue is squarely before us whether there should be a privilege or not. I think the difference... How can there be any debate about it if there is no one to represent the inspector general and the Corporation Council is in a conflict on that very position? Well, if Your Honor is asking the question, if we're assuming that there's jurisdiction at all in the courts for this dispute that we explain is simply an internal governmental dispute that we urge the court to find to be non-justiciable, then the lawsuit would simply be unauthorized under the municipal code and for that reason it does make a difference. But if the court were to go on and reach the issue of privilege, we urge the court to affirm on that ground as well. The attorney-client privilege has been applied across the board in all civil cases involving municipal corporations and even in cases involving allegations that there's been corruption or misconduct in a governmental body. And to address Your Honor's concerns we alluded to earlier, it's important to remember that the privilege, invocation of the privilege, which undisputedly applies to government attorneys, and perhaps we can talk about whether exceptions should be written, that just takes away a single piece of evidence, which is what the client said to his or her or its lawyer. That doesn't mean that the facts themselves, underlying facts, are not privileged. So the inspector general, like any other body that investigates or prosecutes or does anything else, can talk to witnesses, can get documents, can conduct an investigation. Generally speaking you do agree, don't you, that whether or not a privilege exists is something generally that a court can delve into? Yes. How in this case is there any difference or what makes it different that here the court was asked in a declaratory judgment case to determine whether or not the privilege that was exercised was indeed exercised appropriately? Why is that not justiciable? It's not justiciable because we don't have a proper plaintiff versus defendant. We have the city versus the city. But the court concluded that there was a conflict. I mean is there any question that there's a conflict here? There's a conflict between two municipally created entities and there's a conflict as to whether or not one of those entities can exercise the attorney-client privilege. Why cannot the circuit court decide that issue when those entities are, according to that court, at conflict and at issue? I don't doubt that the two agencies here have a conflict in a sense. That they are trying to advance different interests. However, that conflict, because it's within two branches of city government. That are paid by different, that are paid by the same entity that somehow takes it out of the courts. And more than simply who is paid, I should add. In the city's government there's a unitary executive, the mayor. And even the inspector general is supervised by the mayor. For all of his claims of independence. And he may well need and have some political independence. But there's no legal freestanding. Can the mayor decide whether or not a privilege exists? The mayor, if the mayor's in the control group and he's part of the communications, he could waive the privilege. Can the mayor decide whether a party has accurately exercised the right to an attorney-client privilege? If you're asking whether the mayor could force the corporation council to go forward and... I'm just asking... Your first suggestion is that there's no justiciable matter because one department cannot proceed against another department of the city of Chicago. But the real issue here is a privilege that was exercised by the corporation council. And I'm trying to find out when the trial court concluded there was a conflict, where that dispute should be resolved. Your position is that the only place that that can be resolved is in a building apart from the circuit court in the office of the corporation council. Is that really what your position is? That is our position, that this is an internal conflict that should be resolved by the head of the organization. And do you believe that's good public policy or bad public policy? We certainly believe that allowing the government to exercise the privilege and resolving its own internal disputes is good public policy because the departments and employees need to be able to consult freely. Well, what if the department, the corporation council, is exercising the privilege according to another party improperly or unfairly? Where should that dispute be resolved? If it's the inspector general or any other? And a privilege is just what it says, a privilege. It's not a right. It's a privilege. It is a privilege. Who should be the arbiter of whether or not the privilege was exercised properly? Well, in this case, when we submit that when the dispute involves, when it's another branch of city government claiming that the privilege was not properly asserted, that that is a matter that just needs to be resolved by that governmental entity. Is there any case that you would direct us to that would suggest that when the exercise of attorney-client privilege arises amongst municipal departments that there is no place for resolution of that other than by the corporation council? Is there any case that would suggest that that is something that we should do when this is not a right but it is a privilege? I think we could get there by putting a couple of cases and concepts together. I mean, Tanner is the lead case that we cite on this issue of justiciability, and there was two members of the same board with an internal dispute. And what was their dispute about? I believe it was... It wasn't about an exercise of an attorney-client privilege. It wasn't about the privilege. Well, you refresh me. Two board members were going in favor. That's right. On what? On whether police pension benefits should be awarded. And the other disagreed and ended up bringing suit about that. That's really not a comparable situation to this. It's not about privilege, and that's why I'm suggesting. I mean, there isn't a case exactly like this one, of course. Yes. But there are certainly other cases that do. What else do you have besides Tanner? It would suggest that the exercise of a privilege is something that should be decided in some room. Well, I think sanitary district does help illuminate that to some extent. All right. Because in that case, and again, there is no case exactly like this, but this is the concept we're drawing from them. In sanitary district, the CBA, which was then the body that would do disciplinary proceedings, was investigating 56 lawyers of the sanitary district. And for various misuse of public funds, essentially not doing work they said they were doing and getting paid for it, ghost-payrolling, more or less. So when the court looked at one particular attorney, that attorney said, well, my client, the sanitary district, hasn't waived the privilege. I can't tell you where I've been or what I've been doing. Didn't the court then look at that and determine that there was a privilege? The court said there was privilege. Yes. Who was looking at that, whether or not there was? Wasn't the court the decision-maker? The court was the decision-maker, but it didn't look beyond the entity's assertion of privilege. It didn't disagree. It simply said, well, if it's privileged, it's privileged, and there's not going to be any discipline for this lawyer. So it didn't actually go beyond the assertion of privilege there. And I think sanitary district is important because it's the only case where the Illinois Supreme Court has actually held that there's no reason why a municipal corporation can't assert the privilege just like any private. But the court made that holding, not the corporation counsel. The court decided that the privilege could be exercised. Well, the court decided it could be, but simply because it was. It was invoked. And the court said, okay, it's been invoked. That means the allegations can't be substantiated, and that's going to be the end of our inquiry on whether this attorney can be disciplined or not. Now, the inspector general looks at some language in consolidation coal and in waste management, but in fact the holding of sanitary district, that it can be properly invoked by a municipal corporation, has never been overruled. And isn't that the key word there, properly invoked? I mean that to say it's available. I just don't understand where does one go if there's a claim that a privilege is being improperly invoked? I think that would go to the mayor. The mayor. And if the mayor decided that the privilege was being properly invoked, then where does it go? I don't think it goes any further. I don't think there's any authority for your statement that the mayor decides whether or not the corporation council properly invokes a privilege, because a privilege is just what it says it is, and I think that's an area for the courts to be involved in. I don't think that the mayor decides whether the privilege  Well, our position, of course, is that we don't see any case that supports a lawsuit or jurisdiction over a lawsuit by two branches of city government against each other. And so that leaves it to be an internal dispute, and that's sort of how we get to that. And there are certain things that are left to be disputed internally. That's right. I don't think there's any question. And again, I think it's important to emphasize that the inspector general has other tools available. This simply removes one aspect of the evidence he'd like to create. And the other tools are certainly that he could have gone to the mayor. He could have gone to city council. He could take his file and turn it over to any number of true investigators. That's right. And that's if a regular diligent investigation really can't go any further without a privileged, confident communication between the city and its lawyer. And prosecutors and law enforcement prove cases all the time without knowing what the defendant has told his lawyer. There are other ways to build a case. And just briefly, I want to touch on the duty to cooperate since the inspector general has so heavily on that as the reason that city employees and department, the city itself, shouldn't even have an expectation of confidentiality in conversations with the corporation council. The ordinance does not support that reading because in a provision that the inspector general actually ignores, there's an objection provision. It's not a blanket duty to cooperate without any assertion of any objection at all. In fact, it's built right into the ordinance that any party served with a subpoena from the inspector general can object. And certainly privilege is the sort of objection that would be reasonable, and he doesn't really claim it isn't. And how do you just, you have in your brief, but refresh my memory on how you would distinguish the waste management case in terms of the obligations of the issue there and in this case? Well, I think the clearest distinction besides the fact that that was specific to an insurance contract and the relationship between an insured and an insurer, which does not easily or maybe at all analogize to the two departments at issue here, waste management, the duty to cooperate, actually was absolute in that insurance contract. And that insurance contract remained in effect until the parties didn't want to enforce it anymore, and they still did. So there was no qualification. There was no objection provision. There were no exceptions of any kind there. And that's probably the primary distinction besides our argument that this involves unique policy considerations to the insurance contract and preventing collusion between the insured and the party claiming coverage. I mean, right, the insurance company. Nor would it make any sense, we submit, for the city council to have written the ordinance to abrogate privilege. As I referred to at the beginning, the departments and employees rely heavily on the corporation council's office every single day to do their jobs. No, you've already told us that, and it's in your brief. That is true, Your Honor. And your time is long gone. It is, and I thank the court for that indulgence. And in conclusion, we would just ask that the judgment be affirmed. Thank you. Rebuttal. Thank you, Your Honor. I'd like to make four quick points in the time I have left. The first is to agree with the corporation council's council that there is no issue of redaction in this case. She's right about that, and we're not arguing that the issues have anything to do with whether there was proper redaction. The issue, as far as we're concerned, is whether the attorney-client privilege is available at all. That's my first point. Second point, do we have a right to be in court? Your Honorable Justice McBride made it clear that under Burnett we do. There is no reason to distinguish. No, I haven't made any decision. I'm just asking the parties to be fair. I've brought you on our side on that, Your Honor. I do think that there's a serious issue about where this issue should be decided, whether this is something that's an internal question or whether it is a justiciable matter. They're saying simply because of the nature of who these entities are that this should be decided elsewhere. But the trial judge here herself noted that there was a conflict, and I don't know what she meant by that, but I think she meant there was a disagreement about whether or not the corporation counsel was appropriately exercising a privilege or maybe she simply meant that you want one thing, they want another. I don't think she meant either of those. I think she meant conflict in the sense in which the professional rules of conduct talk about conflict, one lawyer being on both sides of the case. If we are right about Burnett, I won't attribute this to you as your view, but if Burnett gives us a right, and Burnett says absolutely nothing about the source that I recall, about the source of payment, that's irrelevant. It's got two solid freestanding reasons in Burnett why they had a right to be in court. If we have a right to be in court, which we maintain we do under Burnett, then the corporation counsel can't be on both sides. Let me ask you the same question that I asked the corporation counsel. Why is it that you think the inspector general is the arbiter of privilege? We do not. We think the court's level. On the contrary, we brought this issue to the courts to resolve. So you are seeking the court's assistance in deciding whether or not the corporation counsel improperly exercised the privilege. We are indeed. Let me say you've waived this. We are indeed seeking the court's arbiter decision as to whether the privilege is available under the circumstances of this case. We have a right to do that under Burnett. Does the trial court then have a right to review these documents in camera to determine whether or not the privilege was properly exercised? Well, she of course could have done that, but that would have been irrelevant to our contention. Our contention is that whether they did a good job or a bad job in exercising the privilege is irrelevant because in our view, under the circumstances of this case, they had no right to exercise it. It wasn't available to them. So that's where I'm losing you. I'm losing you. Let me try to explain once more, Your Honor, why we think it's not an issue of whether they exercised it properly by drawing a line, a redaction line here or there. We gave four reasons. One of them is dispositive under waste management. That's the duty of cooperation. By the way, the sanitary district case, which Steve relies on, doesn't have a duty of cooperation. The only relief that you're requesting is that we issued an opinion saying that there's no privilege here. Yes. Under the circumstances of this case, the privilege is unavailable and therefore we're entitled to the liberty We asked mainly to have the subpoena enforced. You could be wrong on whether or not the privilege was exercised properly. We had no contest on that. It may have been exercised properly or not, but we haven't chosen in the pleadings to raise that issue. So if, resumptively, Corporation Council is right, there is no issue about the property. If the Corporation Council does have the right to exercise privilege. Not in the circumstances of this case. If we were to conclude that the privilege exists under this scenario, then where are you? If you concluded the privilege existed, then you should grant the Corporation Council the relief she seeks, namely the dismissal of the complaint. My last point of the four goes back to the attorney-client privilege. Professional rule of conduct, the title of which is 1.6, confidentiality of information. A lawyer may, and I'm quoting from the rule, a lawyer may reveal information relating to the representation of a client to, now paragraph sub 6, to comply with other law or a court order. Other law or a court order. This court order, no violation of the rules. If there's other law that mandates it, no violation of the rules. We contend, Your Honors, bottom line, the four reasons I have given, and they're laid out in the brief, constitute the other law dictating that in this scenario, the privilege is unavailable. And the first of those four reasons is the duty of cooperation. You've already told us all of this. Thank you very much. We thank both of you. It was very well done briefs, and the arguments were very well done, and we congratulate you for that. And we will take this case under advisement.